IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE: JAMES CROSBY,
PATRICIA A. CROSBY,

Case No. 18-24094

Debtors.                                                                 Chapter 13

_____

UNITED STATES OF AMERICA,

    Plaintiff,

Adv. Pro. No. 19-00121

v.

JAMES CROSBY AND PATRICA A. CROSBY,

    Defendants.

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, United States of America, on behalf of the Social Security Administration ("SSA"), by undersigned counsel, hereby submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and in Support of its Cross-Motion for Judgment on the Pleadings.

### INTRODUCTION

Debtor-Defendant James Crosby ("Crosby") pled guilty in Maryland circuit court to defrauding SSA from 1999 through 2007. During that time, Crosby falsely concealed his earnings, even misrepresenting his ongoing work when SSA asked him directly about it. Crosby's conduct resulted in him receiving $88,195.50 in social security disability benefits that he was not entitled to. After pleading guilty, the Court stayed the entry of judgment and Crosby was placed on a ten year probation (known as "probation before judgment" or "PBJ"). As a condition of his probation, Crosby was ordered to pay restitution to SSA in the reduced amount of $25,000.

Crosby does not dispute these facts but instead argues that the amount ordered in restitution somehow fully satisfied his debt owed to SSA. This assertion is incorrect, as a matter of law. An order of restitution does not bind a victim from recovering its full loss. Nor would a state court have authority to reduce the amount owed to SSA. Instead, the Social Security Act ("Act") governs SSA's rights and obligations to recover overpayments. Thus, notwithstanding any state court order of restitution, Crosby continues to owe to SSA the remaining amount he was overpaid. And because his overpayment was the result of actual fraud (fraud which he admitted to), this debt is nondischargeable under the Bankruptcy Code. For these reasons, the Court should deny Crosby's Motion to Dismiss and grant the United States' Motion for Judgment on the Pleadings.

## UNDISPUTED MATERIAL FACTS [1]

### A. Procedural Background

Crosby filed a bankruptcy proceeding under Chapter 13, seeking to discharge his debt to SSA. *See* D.Md. Bankruptcy. No. 18-24094, Dkt. No. 1, Schedule E/F, p. 47. On April 17, 2019, the United States filed this adversary proceeding asserting that Crosby's debt to SSA is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because Crosby obtained disability payments by false pretenses, false representation, and/or actual fraud. *See* Adv. Pro. No. 19-00121, Dkt. No. 1 ("Compl."). Specifically, Count I of the Complaint seeks an order that the United States is entitled to recover the remaining balance of $61,858.70 to the extent that the debt is not discharged in bankruptcy. *See* Compl. at ¶¶ 25-28. Count II of the Complaint seeks an order that Crosby's debt in the amount of $61,858.70 is nondischargeable pursuant to Section 523(a)(2)(A) of the

---

[1] These facts are as presented in the United States' Complaint, and the exhibits annexed thereto. *See* Dkt. 1. In his Answer, Crosby has not disputed any of these underlying facts; instead, he asserts a purely legal matter as a defense. *See* Dkt. 4, at pp. 1-2. Crosby's argument will be discussed *infra* in Section (A) of the United States' Argument.

2

Bankruptcy Code. *See* Compl. at ¶ ¶ 29-34. Crosby filed an Answer on May 2, 2019. See Adv. Pro. No. 19-00121, Dtk. No. 4. Crosby filed a motion to dismiss the Complaint on June 5, 2019. *See* Adv. Pro. No. 19-00121, Dkt. No. 19.

### B.  Crosby's Social Security Disability Benefits

Crosby applied for Social Security disability benefits by completing an application for benefits (Application). *See* Compl., Exhibit A (*Application for Benefits*). On his application, Crosby stated that he "became unable to work because of my disabling condition on February 22, 1990". Furthermore, Crosby agreed that:

> "I agree to notify the Social Security Administration of all events as explained in the rights and responsibilities pamphlet given to me.
>
> I agree to notify the Social Security Administration if:
>
> --My medical condition improves so that I would be able to work, even though I have not yet returned to work.
>
> --If I go to work whether as an employee or a self-employed person.
>
> ….The above events may affect my eligibility to disability benefits as provided in the Social Security Act, as amended."

*See* Compl., Exhibit A, p. 2.

SSA began paying Crosby disability payments in 1991. *See* Compl., Exhibit B (*Notice of Award*). In the Notice of Award, SSA advised Crosby that, "The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away." *See* Compl., Exhibit B, p. 2. A booklet accompanying the Notice of Award entitled also advised Crosby of his obligation to report his earnings. *See* Compl., Exhibit C (*SSA Booklet*), p. 15. The Booklet advised, "Be sure to notify Social Security as soon as you begin working no matter how little you earn" (emphasis added). *See* Compl., Exhibit C, p. 15.

In April 2006, a routine review of Crosby's earnings revealed that he had returned to work in January 1999 and continued to earn substantial income, rendering him ineligible for disability benefits. *See* Compl., Exhibit D (*Earnings Report*). The Agency then suspended Crosby's benefits pending further review, and contacted Crosby for an explanation. *See* Compl. at ¶ 16. In response, Crosby visited his local Field Office and falsely indicated that he had no current earnings and that someone must have stolen his identity. *See* Compl. at ¶ 17. Based on Crosby's representations, the Agency temporarily reinstated Crosby's benefits. *See* Compl. at ¶ 19. However, SSA separately also contacted Dayspring Programs and Johns Hopkins Health System, two of Crosby's employers, who confirmed that Crosby was in fact working, contrary to his representations. *See* Compl. at ¶ 20. As a result, SSA determined that Crosby was not entitled to benefits beginning January 1999. *See* Compl., Exhibit E (*Disability Cessation*). In the Disability Cessation notice, Crosby was informed of his right to appeal the decision if he disagreed. *See* Compl., Exhibit E at 2. SSA then referred Crosby's account to SSA's Office of Inspector General (OIG), for further investigation. *See* Compl. at ¶ 21.

### C. Criminal Prosecution for Theft

In December 2007, Crosby was criminally charged in the Circuit Court of Baltimore County with theft of SSA property in the amount of $88,195.50—the amount of disability benefits he received from January 1999 through May 2007. *See* Compl., Exhibit F (*Indictment*). Crosby pled guilty to the charge, and the Circuit Court for Baltimore County placed him on "probation before judgment" (PBJ) pursuant to section 6-220 of Maryland's Code of Criminal Procedure, which authorizes PBJ when "a defendant pleads guilty or nolo contendere or is found guilty of" a crime. *See* Compl., Exhibit G (*Order of Judgment and Judgment of Restitution*). The court

4

ordered Crosby to pay $25,000 in restitution over the course of a ten-year probation period. *See* Compl., Exhibit G

### D. Crosby's Payments Made to Satisfy Debt Owed to SSA

Since pleading guilty to defrauding SSA, Crosby has partially repaid the overpayment, leaving a current outstanding balance of $61,858.70. *See* Compl. at ¶ 27.

### LEGAL FRAMEWORK FOR SOCIAL SECURITY DISABILITY BENEFITS

The Act defines disability as an inability to engage in any substantial gainful activity ("SGA") due to a medically determinable impairment which lasts for a continuous period of not less than 12 months. 42 U.S.C. § 423(a), (d)(1)(A), (e); 20 C.F.R. § 404.1505(a). To meet this definition, and thus be initially eligible for disability insurance benefits ("DIB"), an individual must have an impairment that makes him "unable to do [his] past relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a). SGA "[i]nvolves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Work may be SGA "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). If an individual is performing SGA, SSA will find that the individual is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

As a condition of benefit eligibility, SSA requires a DIB recipient of benefits to promptly inform SSA anytime his condition improves; he returns to work; he increases the amount of his work; or his earnings increase. *See* 20 C.F.R. § 404.1588(a) (explaining that it is the individual's responsibility to inform SSA of events that change disability status). SSA relies on these reports to determine whether benefits should be continued, adjusted, or stopped. *Id.*; *see In re Drummond*, 530 B.R. 707, 710 (Bankr. E.D. Ark. 2015) ("The debtor's requirement to notify SSA if she

returned to work is the representation—or lack thereof—that forms the pretense under § 523(a)(2)(A).").

Pursuant to the Act, SSA has established monthly presumptive income thresholds for determining whether a person is engaged in substantial gainful activity (SGA). A non-blind Recipient engages in SGA if their monthly income exceeds the following amounts during the following years: [2]

| Year | Amount |
|------|--------|
| 1999 | $700 |
| 2000 | $700 |
| 2001 | $740 |
| 2002 | $780 |
| 2003 | $800 |
| 2004 | $810 |
| 2005 | $830 |
| 2006 | $860 |
| 2007 | $900 |

## STANDARD OF REVIEW

After pleadings are closed, Fed. R. Civ. P. 12(c)[3] permits a party to move for judgment on the pleadings. *See* Fed. R. Bankr. P. 7012(b) (incorporating Fed. R. Civ. P. 12(c) in adversary proceedings). In deciding a Fed. R. Civ. P. 12(c) motion, the Court may properly consider (1) the complaint and the exhibits annexed thereto; (2) the Answer and the exhibits annexed thereto; and (3) matters of public record. *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).

Where a party moves pursuant to Fed. R. Civ. P. 12(c) to dismiss a complaint for failure to state a claim, the Court should apply the same standard it applies to Fed. R. Civ. P. 12(b)(6)

---

[2] *See* SSA Official Website, http://www.ssa.gov/oact/cola/sga.html (last visited: June 18, 2019).

[3] While Crobsy's motion seeks to dismiss the complaint pursuant to Fed. R. Civ. Pro. 41, it is believed that plaintiff seeks to move to dismiss the complaint pursuant to Fed. R. Civ. Pro. 12(c).

motions. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). A complaint must plead facts adequate "to state a claim for relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In contrast, where a party moves for a declaratory judgment in its favor pursuant to Fed. R. Civ. P. 12(c), the Court should apply a Fed. R. Civ. P. 56 motion for summary judgment standard. *See Eastham v. Eastham*, Civil Action No. DKC 16-0386, 2016 U.S. Dist. LEXIS 89766, at *3 (D. Md. July 11, 2016). Summary judgment is proper when the moving party demonstrates, that "no genuine dispute as to any material fact" exists when construing all facts and all justifiable inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(a), (c)(1)(A); *see also* Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable to adversary proceedings). Once a moving party presents a properly supported motion for summary judgment, the nonmoving party must "present affirmative evidence in order to defeat" that motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257-58 (1986) (citation omitted). A mere "scintilla of evidence" suggesting a material dispute is not enough to defeat a motion for summary judgment. *Id.*, 477 U.S. at 251-52. Rather, the record evidence must demonstrate that a reasonable trier of fact could find in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ARGUMENT**

The United States respectfully summits that Crosby's motion to dismiss should be denied, and judgment on the pleadings in favor of the United States should be granted in full. First, Crosby's motion is based upon his belief that the state court restitution order limited SSA's right to recover all of its overpayment to Crosby. Crosby is incorrect as a matter of law. As such, Crosby's motion should be denied, and judgment in favor of the United States as to Count I should

be granted. Second, Crosby's debt to SSA is non-dischargeable because the undisputed facts demonstrate that Crosby obtained $88,195.50 in disability benefits fraudulently. As such, judgment in favor of the United States as to Count II should be granted.

### A.   The Terms of Crosby's Restitution Order Did Not Modify His Obligation to SSA

In Maryland, a court may order a criminal defendant to pay restitution as a condition of probation. Md. Code Ann., Crim. Proc. § 6-220. An order of restitution is warranted where, *inter alia*, property of a victim was unlawfully obtained. Md. Code, Crim. Proc. § 11-603(a). When a court determines the appropriate amount of restitution, the court may properly consider the defendant's means to pay the restitution. *State v. Vargas*, 2015 WL 9911317, at *4 (Md.Cir.Ct.) ("Criminal restitution considers the defendant's ability to pay while a civil judgment may be entered against one who does not have the means to pay."). "A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state." *State v. Vargas*, 2015 WL 9911317, at *5 (Md. Cir. Ct. Dec. 22, 2015) (*quoting The People v. Bernal*, 101 Cal. App. 4th 155, 162 (Cal. Ct. App. 2002)). "What [the restitution order] does not do, however, is to create, on its own, a contractual liability between the defendant and a third party that otherwise would not exist." *Grey v. Allstate Ins. Co.*, 363 Md. 445, 466 (2001).

In Crosby's motion, his sole contention is that his obligation to repay SSA ended when he satisfied the terms of the state court's restitution order. *Id.* As set forth above, however this is incorrect as a matter of law. The terms of Crosby's probation and his SSA overpayment are entirely separate obligations. While SSA, as the victim of Crosby's crime, would receive partial payment as a result of the state courts' restitution order, SSA was not a party to the proceedings and the restitution order in no way alters SSA's rights to see overpayment in full. Indeed, contrary to Crosby's representation, the court's Order of Judgment purports *only*, per Crosby's

8

"agree[ment] to pay," to modify the judgment itself—i.e., the criminal sentence that had referenced Crosby's total indebtedness of $88,195.50.  *See* Compl., Exhibit G at p. 1.

Finally, even *if* the trial court had attempted to modify Crosby's indebtedness to SSA (which it simply did not do or seek to do), it would not have had authority to do so.  The Act vests in the Commissioner the authority to determine if individuals have been overpaid.  *See* 42 U.S.C. § 404(a)(1).  The Act unambiguously prescribes that "Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made," pursuant thereto.  *See* 42 U.S.C. § 404(a)(1).  Notably, the text of the Act does not make SSA's recovery contingent on a finding rendered in a criminal (or other) proceeding.

The Commissioner has promulgated an administrative review process with respect to overpayment calculations.  *See generally, e.g.*, *Barbara L. v. Comm'r of Soc. Sec. Admin.*, No. 18-3465, 2019 WL 1573577, at *3 (D. Md. Apr. 10, 2019) (citing 20 C.F.R. § 404.900(a)).  Crosby does not argue that he has completed the administrative review process with respect to the calculation of his overpayment.  And even if he had completed the administrative review process with respect to the calculation of his overpayment, the Act prescribes that a request for review of the Commissioner's final decision "be," among other things, "brought in the district court of the United States for the judicial district in which the plaintiff resides."  *See* 42 U.S.C. § 405(g); *Matthews v. Eldridge*, 424 U.S. 319, 327 (1976) ("The only avenue for judicial review is 42 U.S.C. § 405(g), which requires exhaustion of the administrative remedies provided under the Act as a jurisdictional prerequisite.").

Further, the Commissioner's duly promulgated Regulations also make clear that adjustments to indebtedness "*will not* be available if the overpayment was caused by the

9

individual's intentional false statement or representation, or willful concealment of, or deliberate failure to furnish, material information," the very conduct Crosby pled guilty to here. *See* 20 C.F.R. § 404.502(c)(2) (emphasis added); *see also* 20 C.F.R. § 404.515(b)(1) ("[A] claim for overpayment will not be compromised, nor will there be suspension or termination of collection of the claim by the Administration if there is an indication of fraud, the filing of a false claim, or misrepresentation on the part of such individual or on the part of any other party having an interest in the claim."). As such, a state court simply has no authority to alter SSA's right to recovery.

Thus, Crosby's indebtedness to SSA remained in full after Crosby pled guilty. The state trial court did not have authority to modify the Commissioner's determination of Crosby's indebtedness to SSA even had it sought to do so—which it did not. Therefore, Crosby's Motion to Dismiss must be denied, and judgment in favor of the United States as to Count I of the Complaint should be granted as a matter of law.

**B.      Crosby's Debt is Non-Dischargeable Due to His Fraud**

Crosby fraudulently obtained disability benefits and, therefore, the resultant overpayment is non-dischargeable. A debt is excepted from discharge where it was obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To except a debt from discharge under Section 523(a)(2)(A), five factors must be present: (1) the debtor must have made a false representation; (2) the debtor must have known that the representation was false at the time the representation was made; (3) the debtor must have made the representation with the intention and purpose of deceiving the creditor; (4) the creditor must have justifiably relied on the representation; and (5) the creditor must have sustained injury as a proximate result of the representation. *U.S. v. Hampton*, 396 B.R. 28, 30 (Bankr. N.D. Iowa 2008); *see In re Hall*, 515 B.R. 515, 520 (Bankr. S.D. W.Va. 2014) (citing *Hampton*).

Here, there is no genuine dispute as to whether these factors are present.  First, Crosby pled guilty to defrauding SSA.  *See* Ex. G.  A guilty plea, even where a probation before judgment is entered, is admissible evidence of the defendant's guilty.  *See Crane v. Dunn*, 382 Md. 83, 101, 854 A.2d 1180, 1191 (2004)("the admission in traffic court to negligent driving is admissible and substantive evidence"); *Fed. Ins. Co. v. Edenbaum*, No. JKS 12-410, 2012 U.S. Dist. LEXIS 94263, at *6 (D. Md. July 6, 2012) (guilty plea admissible even where probation before judgment was entered); *State v. Westpoint*, 404 Md. 455, 497, 947 A.2d 519, 544 (2008) (guilty plea constitutes evidentiary admission).  Second, a review of the Answer to the Adversary Complaint demonstrates that Crosby does not challenge the facts outlined in SSA's Complaint in any material respect.  *See* D.Md. Bankruptcy No. 19-00121, Dkt. Nos. 4, 19; *see Hall*, 515 B.R. at 518 (finding debt nondischargeable where "the Defendant's admissions of the allegations in the Complaint constitute admissions of those same allegations in the Motion for Summary Judgment").  Nor will Crosby be able to offer any evidence in opposition to the United States' motion to dispute any of the facts relied upon by the United States in support of its motion.  For these reasons alone, the Court should grant judgment in SSA's favor as to Count II, and hold the debt non-dischargeable.

Nevertheless, even if SSA was required to produce additional evidence to demonstrate Crosby's fraud, it has done so through the exhibits annexed to the complaint.  See e.g. *In re Hall*, 515 B.R. 515, 520 (Bankr. S.D. W.Va. 2014)(granting summary judgment based upon similar facts). Specifically, when Crosby filed his application for benefits, he agreed that he would notify SSA if his condition improved such that he could resume work.  Exhibit A, p. 2.  In addition, when SSA granted him benefits, it told him to, "[b]e sure to notify Social Security as soon as you begin working no matter how little you earn" Exhibit C, p. 15.  Nevertheless, Crosby returned to work in 1999, collected benefits for eight years thereafter, and never told SSA.  Crosby's failure to report

11

his earnings was a false representation. "A debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." *Hampton*, 396 B.R. at 30; *In re Wooten*, 423 B.R. 108, 121 (Bankr. E.D. Va. 2010) ("Misrepresentations for the purposes of § 523(a)(2)(A) need not be overt; in the context of § 523(a)(2)(A), misrepresentations can be overt or may be implied by silence. Silence or concealment as to a material fact can constitute a false pretense or a false representation as surely as an overt act."). Crosby's silence despite his knowledge of the reporting requirements also establishes his false pretenses. *Check Control, Inc. v. Anderson (In re Anderson)*, 181 B.R. 943 (Bankr. D. Minn. 1995) (stating that false pretense can consist of "silence when there is a duty to speak") (*quoting In re Dunston*, 117 B.R. 632, 641 (Bankr. D. Colo. 1990)); *see Drummond*, 530 B.R. at 710 ("Had the debtor not intended to deceive SSA, she should have disclosed her employment sometime between January 2008, when she became employed, and July 2010, when SSA verified her employment."). Moreover, after SSA discovered Crosby's earnings and asked him for an explanation, Crosby falsely told SSA that he was not working and that someone had stolen his identity. SSA justifiably relied on Crosby's silence and even overt misrepresentations in continuing to pay benefits to him. *See, e.g.*, *In re Pipkin*, 495 B.R. 878, 881 (Bankr. W.D. Ark. 2013) ("The evidence here meets the test required by law in that the Debtor, by failing to notify SSA of his employment, made a false misrepresentation with the knowledge of its falsity and he did it deliberately for the purpose of deceiving the Plaintiff so he could continue to draw the social security benefits. . . . [T]he failure to report the employment proximately caused the Plaintiff to overpay the Debtor which resulted in the Plaintiff's damage.").

Because of Crosby's misrepresentations, SSA paid him $88,195.50 in benefits to which he was not entitled (which has since been reduced to $61,858.70). Crosby pled guilty to the conduct

at issue, and he does not dispute any facts material to the determination of nondischargeability. Accordingly, the factors have been met for an exception to discharge under Section 523(a)(2)(A). Judgment should be entered in favor of the United States as to Count II of the Complaint.

## CONCLUSION

For these reasons, Crosby's Motion to Dismiss should be denied, and United States' Motion for Judgment on the Pleadings should be granted. The United States of America requests that the Court except from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) James Bernard Crosby's debt of $61,858.70 for an overpayment of Social Security Disability Benefits.

Respectfully submitted,

ROBERT K. HUR
United States Attorney
District of Maryland


 /s/  Jane E. Andersen
JANE E. ANDERSEN (Bar No: 802834)
Assistant United States Attorney
Office of the United States Attorney
District of Maryland
36 South Charles St., Fourth Floor
Baltimore, MD 21201

*Attorney for the United States*

OF COUNSEL:
Eric P. Kressman
    Regional Chief Counsel
Corey Fazekas
    Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
300 Spring Garden Street, Sixth Floor
Philadelphia, PA 19123